McNair *et al. v.* M. L. Virden Lumber Co., Inc.

(In Banc. Nov. 24, 1941. Suggestions of Error Overruled Jan. 12, 1942.)

[4 So. (2d) 684. No. 34694.]

Vincent J. Brocato, of Clarksdale, for appellants, Steve D. and Sally B. McNair.

234

Breland & Lowrey, of Clarksdale, for appellant, L. D. Hill.

**Holcomb & Curtis,** of Clarksdale, for appellee.

239

Argued orally by **Stovall Lowrey** and **Vincent J. Brocato**, for appellants, and by **Chester H. Curtis**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

In the fall of 1939 Mr. and Mrs. Steve McNair procured plans and specifications for the erection of a residence some four miles from Clarksdale, in Coahoma County. They invited bids for the construction of the residence in accordance with those plans and specifications. They

considered all bids too high. They had the plans revised, and again asked for bids according to the revised plans. Mr. H. B. Dunn was the lowest bidder. He was awarded the contract. It was written and dated November 8, 1939. It set out what Dunn was to do, but also expressly stated that certain parts of the job, such as electric work, were not in the contract, and would be done by the Mc-Nairs themselves. But Dunn's bid included the plumbing. Dunn proceeded with the work, and the McNairs moved into the new home December 12, 1939.

On February 13, 1940, appellee, Virden Lumber Company, Inc., gave Mr. McNair written notice that it had furnished to Dunn lumber which went into the construction of the building, and that the balance owing to it by Dunn was $549.09, and on April 10, 1940, it gave a like notice to Mrs. McNair. These notices were under section 2274, Code 1930.

About May 8, 1940, Virden filed a petition, in accordance with said section, in the county court of Coahoma County, making defendants thereto Dunn, the contractor, and the McNairs, the owners, and Hill, who had done plumbing work in the house, asking (1) that any balance owing by McNair to Dunn be impounded in the hands of McNair and be applied to the payment of the balance of its account against Dunn; (2) that a lien be impressed on the property to secure the payment of its balance; and, (3) for a personal judgment against Dunn.

The McNairs answered this petition, admitting the contract with Dunn, the receipt of the notice to Mr. Mc-Nair, and that they owed Dunn a balance of $326.80 on the contract, offered to tender this amount into court, and asked that all claims of laborers and materialmen be brought into court and adjudicated.

Hill answered, claiming (1) that his contract was direct with the McNairs, and that he had a first lien on the house to secure payment of his account of $325, and was entitled to a personal judgment against the McNairs; but that if

mistaken in this, (2) he was entitled to share pro rata with all other unpaid laborers and materialmen in the balance owing by the owners to the contractor.

About August 15, 1940, Memphis Sash & Door Company gave written notice to the McNairs that it had furnished materials which went into construction of the house and had not been paid, claiming a balance of $178.62. On or about August 16, 1940, this concern intervened in the pending case by filing a petition therein, claiming that its contract was direct with the McNairs, and it was entitled to a personal judgment against them and a lien on the house for its unpaid balance, but, if mistaken in this, that it was entitled to share, pro rata, with the other laborers and materialmen in the balance owing by the owners to the contractor.

No written notice was ever given the owners by Hill, unless the filing of the petition in this case constituted such notice.

The judgment of the county court was that the McNairs owed Dunn, the contractor, on February 13, 1940, the date Mr. McNair received the Virden notice, a balance of $548.57; that neither Hill nor the Memphis Sash & Door Company had a contract direct with the McNairs, but were sub-materialmen under the contractor, and that Virden, having given the first notice to the owners, was entitled to full payment of its balance out of the funds owing by the McNairs to Dunn, after payment of costs, and, if after such full payment there remained any balance, this would next be applied to the debt of Memphis Sash & Door Company, and any balance would then be applied to the debt to Hill, the plumber. In other words the county court held that priority of notice conferred priority of right of payment.

The judgment of the county court was affirmed by the circuit court, from which the McNairs and Hill appeal. Memphis Sash & Door Company did not appeal.

In determining the amount owing by the McNairs to the contractor the lower court charged the McNairs with

$162.50 which they paid to Dunn after receiving the stop notice February 13th and gave the McNairs credit for $16. It found that the first item was paid for re-papering work defectively done by the contractor, which defects it was the contractor's duty to remedy, and for which he was not entitled to extra pay, but that the second item was the sum necessary to do other work to complete the contract. The McNairs assign this as error. The testimony supports the finding of the lower court, and we approve the finding of fact and conclusion of law.

Hill says the lower court was in error in finding that he had no contract direct with the McNairs. It would unnecessarily lengthen this opinion to detail the testimony on this point. We have examined it carefully, and we find it not only supports the finding of the lower court but that the preponderance thereof is in favor of such finding.

The most important question is whether, under the facts of the case, and under section 2274, Code of 1930, priority of notice confers priority of right as between those in the same class, or whether they share ratably regardless of the time of giving notice, or whether any notice is given at all. We are not considering a case where the owner pays the balance to the one giving notice before he receives such notice from others, or before others assert their claims in court. That is not this case. We will deal with that when and if such situation arises.

Section 2274, Code 1930, is as follows: "When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any house, building, structure, fixture, boat, water craft, railroad, railroad embankment, the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, any such person, subcontractor, journeyman or laborer may give notice in writing to the

owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums, due such person, subcontractor, journeyman or laborer who might lawfully have given notice in writing to the owner hereunder, and if after such notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court, the amount due on the contract; and thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights, contest the demands of such contractor or master workman and other claimants; and the court shall cause an issue to be made up and tried and direct the payment of the amount found due in accordance with the provisions hereof; or in case any person entitled to the benefits hereof, shall sue the contractor or master workman, such person so suing shall make the owner and all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen or materialmen, so far as known, parties to the suit (and any such party not made a party in any suit hereunder authorized may intervene by petition), and, thereupon the owner may pay into the court the amount admitted to be due on the contract or sufficient to pay the sums claimed, and the court shall cause an issue to be made up and award the same to the person lawfully entitled; in either case the owner shall not be liable for costs; but if the owner, when sued, with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sums claimed and all costs, the court shall, at the instance of any party interested, cause an issue to be made up to ascertain the true amount of such indebtedness and shall give judgment and award costs according to the rights of the several parties in accordance here-

with. In case judgment shall be given against such owner, such judgment shall be a lien, from the date of the original notice, and shall be enforced as other liens provided in this chapter. The owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor."

This is the amendment of section 3074, Code of 1906, passed by the Legislature in 1918, Ch. 128, L. 1918. . The amendment very materially changed section 3074 with respect to the rights of laborers and materialmen and subcontractors furnishing labor or materials to contractors, which labor and materials go into the construction of the buildings being erected by such contractors.

Section 1381, Code 1880, conferred the right upon laborers and materialmen under contractors to give notice to the owners, and the amount then owing by the owners to the contractor "shall be bound and liable in the hands of such owner, for the payment of the sum so claimed."

Section 2714, Code 1892, is in the words of said section 1381, except that it extends the right to subcontractors.

Chapter 153, L. 1904, amended section 2714 by conferring the right to a lien on the property "in favor of the person giving the notice."

Section 3074, Code 1906, is the same as Ch. 153, L. 1904.

Next appears the amendment of 1918, which is the existing law.

Under the law before the 1918 amendment this court held that prior notice gave prior right of payment. Enochs Lbr. Co. v. Garber et al., 116 Miss. 229, 76 So. 730.

And in the case of Citizens' Lbr. Co. v. Netterville, 137 Miss. 310, 102 So. 178, decided after the 1918 amendment, the court followed the Enochs case and announced the same rule. But the Citizens case is not binding on us, for the reason that it is clear the court in that case was not considering the amendment of 1918 and did not pass upon that statute. It had in mind, and was construing, the old statute. The attention of the court was never

called to the change in the statute. We have examined the original briefs of counsel in that case, and neither mentions the change in the statute. On the contrary, the brief of appellee copies section 3074, Code 1906, and all parties and the court proceeded upon the assumption that the Enochs case was controlling, and that section 3074 was the existing statute. The meaning of the old statute had been materially changed by the amendment, and it is not conceivable that the amendment would not have been mentioned and discussed if it had been in the minds of the attorneys and court. The oversight was not unlikely because there had been no official Code since that of 1906 to the time of the decision in the Citizens case.

We will now compare the two statutes. In the first place the title to the act of 1918 declares that one object of the amendment is "to make said rights concurrent," as between laborers, subcontractors, materialmen and journeymen.

The old law provided that notice to the owner would bind in his hands the amount owing the contractor "for the payment of the sum so claimed." The present act binds it for the payment, "in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman or laborer who might lawfully have given notice in writing to the owner hereunder." The old law provided that if after notice the contractor should bring suit against the owner, the owner could pay into court the amount owing under the contract, "and the person giving notice" should be summoned to contest the demand of the contractor. The present act provides in such case that "all persons entitled hereunder, so far as known, shall be made parties . . . to protect their rights," and contest the demand of the contractor "and other claimants." The old law provided that out of the amount found owing the contractor the court should direct payment of the claim of the "person giving notice." The present law directs the court to apply it to the

claims "found due in accordance with the provisions hereof." The old law provided that if the person giving notice sued the contractor, he should make the owner a party. The present law provides "any person entitled to the benefits hereof," may sue the contractor, in which case the owner "and all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen or materialmen, so far as known," shall be made parties to the action; if not, then such person may become a party thereto by intervening in the action. Other differences might be pointed out.

Thus it appears that the very purpose in amending section 3074, Code of 1906, was to confer equal rights on all persons in the same class, regardless when, or whether, such persons had given the owner written notice, provided the owner yet had in his hands funds owing to the contractor when such claimants gave notice, or if notice was not given, the claim or claims were asserted in court. In other words, one notice stops the right of the owner to pay the contractor the amount claimed in that notice.

If other claimants in the same class subsequently give notice to the owner of their claims, or if they do not give the notice, but assert their claims in court, to which the owner is a party, all before the owner has paid out the funds which he had when the first notice was received, then all such persons share ratably in those funds.

If this was not the effect of the amendment, it is difficult to understand why the amendment was enacted.

The old law involved practical difficulties. It is hard to perceive how notices could be given simultaneously unless contained in the same writing. Under the old law one giving notice one minute prior to such notice by other claimants was entitled to all of his money before the others were entitled to anything, which often resulted in that one receiving all the money yet owing by the owner to the contractor, just as in the case at bar, and the others receiving nothing.

The construction given the present statute works right and justice.

Furnishing materials or labor for the construction of the building is the basis of the right—not the giving of notice.

Why should one materialman or laborer, just because he happens to get notice to the owner one minute, or any other time, before other like claimants, be entitled to priority of payment, when the materials and labors of the others also go into the construction of the same building?

As was said in Morganton Mfg. Co. v. Anderson et al., 165 N. C. 285, 81 S. E. 418, 422, Ann. Cas. 1916A, 763, ''This is not only in accordance with law, but also with justice and equity, for when men have put their money and labor in a building, and the balance due is insufficient to pay all, it is not right for one to have the whole fund, in the absence of negligence, because he gets to the clerk's office first.''

Affirmed in part, and reversed in part, and remanded.