J. C. HERRIN ET AL. *v.* WARREN & MOBLEY.

1. GARNISHMENT.   *Payment of fund into court.   Answer of garnishee.*
   A railroad company contracts with S to build its roadbed.  S. contracts with F. for part of the work.  F. employs laborers and makes default, leaving them unpaid.   The railroad company, being garnished by the laborers, answers that it did not owe F. anything, that it contracted with S., who contracted with F.; that they owe S. nine hundred dollars which they understand is claimed by W. and have paid the money into court and ask for protection. *Held,* that the answer and defense of the company was complete and it was fully acquitted by paying the money into court.

2. MECHANICS' LIEN.   *Laborers on railroads.*
   When by the act of March 7, 1882, 115, 116, laborers on railroads were given the same rights as other mechanics, they took them subject to all the obligations imposed by subsequent sections on other mechanics.

3. SAME.   *Section* 1379, *Code* 1880.
   By § 1379 of the Code of 1880 where work has been done by contract, the laborers can never impose upon the owner of the work any higher duty or further payment than he by his contract has imposed on himself.

4. Garnishment. *Prior in time prior in right.*

When a written notice of a claim to a fund by laborers has been served subsequent to a writ of garnishment, the garnishment being first in time is first in right.

5. Same. *Garnishee.*

The garnishee gets just the right that the party garnished has at the time of the service of the writ.

Appeal from the Circuit Court of Yazoo County.

Hon. T. J. Wharton, Judge.

The facts are stated in the opinion.

*A. M. Harlow,* for the appellants.

In this case it will be contended for appellees that appellants were employes of Ferguson & Brothers, who were *sub-contractors;* that Smith & Brother were the parties who contracted with the railroad company, and that no other persons than Smith & Brother can claim the benefit of the statutory lien. Code 1880, § 1379. There would be some force in this reasoning; but the legislature, by the act of March 7, 1882, amended § 1378 by adding, "embankments or other work on railroads" as work for which *the laborer* (not the contractor) should be protected and secured as to his wages; and in the eighth line of said section "railroads" were added as property to which the lien should apply. Acts of 1882, 115, 116. Now, when amending § 1378, if it had been the intention to limit the benefits of the act to the chief contractor and to exclude the laborers employed by the sub-contractor, the amendment would not have stopped with § 1378, but it would have been extended by express words to § 1379, and in the latter section, after the words, "building or other improvements," the amendment would have added, "embankments or other work on said railroads," and that section 1379 would read : "When any such building or other improvement or embankments or other work on railroads shall be erected in whole or in part by contract, such building or improvement or embankments or other work on railroads and the land on which it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract, and no building or land or railroad or improvement shall be subject to the lien created

by this act, unless such building or other improvement or embank-
ments or other work on railroads shall be liable for work done or
materials furnished by any person not employed by the owner."
The amendment of March 7, 1882, stops with § 1378 and is not
extended to § 1379. Suppose that the act of 1880 had omitted
altogether the provisions of § 1379, what would have been the
effect? " Every house or other building, bridge, mill, or any addi-
tion thereto, and any fixed machinery or gearing or other fixtures
for manufacturing purposes, and every boat or other water-craft,
or paling or other inclosure hereafter erected or built within this
State, shall be liable for the payment of any debt contracted and
owing for labor performed or materials furnished," without refer-
ence to the qualifications and conditions embraced in § 1379.
When, therefore, the act of 1880 was amended, so as to embrace
" embankments or other work done upon railroads " by amending
§ 1378, and the amendment was made to stop here without extend-
ing to § 1379, the effect was to give to laborers on " embankments
or other work done upon railroads " an unqualified lien, without
the restrictions applying to other work designated in § 1379.
If, therefore, the suit in this case was commenced " within six
months next after the time when the money due and claimed by
such suit became due and payable" (Code 1880, § 1384) the rights
of laborers are protected and their lien is secured beyond all ques-
tion. In this case the labor was performed in February and March
and the suit commenced May 18, 1883, and on March 14
plaintiff wrote to Captain H. P. Farrar, who was and is engineer
for the company, notifying him that Smith, " the general contractor,
has refused to stand by us and our men and gives us no satis-
faction whatever." They ask "his special attention either in person
or by proxy to adjust the matters and settle with the laborers."
They notify him to " hold their money from Smith or any one else."
A more formal notice was served on Henry Charles, cashier of the
railroad company.

*J. C. Prewett,* on the same side.

I wish to call the attention of the court to this point. Judge
Wharton held in the court below that the laborers were entitled to

nothing; that the fund in the hands of the railroad company was subject to the garnishment and attachment proceedings of Warren & Mobley against the Fergusons, but that the laborers were out in the cold. Now, in the answer of the railroad company they deny that they owe the Fergusons anything. They say they owe *Smith & Bro.*, who were the immediate contractors, but not the Fergusons. The attachment laws of this State permit the creditor to *attach debts or effects due to or owned by the defendant in attachment.* If the railroad company did not owe Ferguson anything (and this is clear from the record) how could Warren & Mobley properly obtain a judgment condemning this fund—a fund not belonging to the defendant in attachment, a debt not due them, but to Smith & Bro., and for the work done by our clients?

*Hudson, Hudson & Holt,* for the appellees.

Our positions are :

1. That the labor being performed by contract, only Smith & Bro. had a lien on the roadbed.

2. That the laborers of the sub-contractors have no right under the statute to give notice and hold the funds in the hands of the owner, but that this right is confined to the laborer of the contractor or the person to whom the owner is indebted, the railroad company stating in their answer that they owèd Ferguson & Bro. nothing.

3. That the lien secured by the writ of garnishment was prior in law, as it is admitted to have been prior in time to the service of the notice, to the rights under the notice of the laborers.

4. That the railroad company admitted in their answer that they had funds in their hands belonging to Ferguson & Bro. to the amount for which judgment was rendered, and there being no contrary proof, the judgment against the railroad company for that sum was properly rendered.

5. That Ferguson & Bro. were never cited by publication nor served with summons to the petition, and being necessary parties, no judgment could be rendered in favor of the petitioner.

6. That there was an assignment by Ferguson & Bro. to Warren & Mobley of what was due them, for all of which reasons we think

the judgment should be affirmed.   Citing Phillips on Mechanics' Liens 86, § 60, *et seq.*; Ib., § 256; *Hugh McCullum* v. *James Richardson & Co.*, 2 Handy 274; 2 McCarter, N. J. Chy. Rep. 30.

*W. P. & J. B. Harris*, for the Yazoo and Mississippi Valley R. R. Co.

The answer to the garnishment and the answer to the petition of the laborers were accepted as true, and, indeed, contain the facts of the case. The laborers have no lien on the property of the company for the plain reason that they sustained no relations to the company at all. Section 1378 of the code applies alone to cases where the owner of the property contracts with the laborer, and the amendment of 1882, acts 115, 116, simply extend the operation of that section to the laborers on railroads. The lien was obviously given against the person employing the labor being the owner.   It was never the design of this legislature where the owner has paid his contractor for the job to make the property liable for the payment of the labor; when he has not paid them, the laborers under § 1381 can give notice and fasten their claim on the fund or money due the contractor.   Any other view of the subject would work the most palpable injustice.   The amount due for labor might exceed the contract price.   The laborers here have not a cumulative remedy.   They cannot have a lien and a right to the money also.   Their right to go on the property only exists when its owner, contracting with them for the work, is in default.   If they have no contract relations with the owner, that is where the owner has made a contract with a principal person or contractor for the job or "master builder," the employes of such contractor or master builder have no lien, but they have a remedy against the owner for what is due to the contractor.   It is clear, therefore, that the two claims cannot be united. Here by the notice to the railrord company the laborers concede they have no lien.   The amendment of 1882 worked no change in this respect.   It is too obvious for controversy that laborers on railroads were to be put on the footing of others in that section, no more, no less, and the construction of it is the same as before the amendment.   The argument that the subsequent sections of the act don't apply to laborers on railroads is simply fatal to the claim of the laborers for

anything.  It requires no strained construction of the act as amended to harmonize the sections from 1378 to 1381, so as to put the laborers on railroads on the footing with others of the class intended to be provided for.  Taking these sections together, it is apparent that the lien was only designed to attach to the interest of the party who employs the labor.  It would be putting too great a strain on the statute as amended to construe it to mean that a *discrimination* was intended between railroad property and the property of other people.  Others of the class protected are equally meritorious, and we cannot impute a design to impose exceptional burdens on railroads.  Such a view stands on a popular desire or tendency not to be encouraged by the court.  The contest here turns on the claim to the sum admitted to be due, and conceded to be all that is due, by the company.  On the part of the company we deny the existence of the lien.

CHALMERS, J., delivered the opinion of the court.

The Yazoo and Mississippi Valley Railroad Company contracted with Smith & Bro. for an agreed sum to build their roadbed from Big Black River to Yazoo City.  Smith & Bro. for an agreed and smaller sum contracted with Ferguson & Bro. to do the work on section 29, said section constituting a smaller portion of the contract taken by Smith & Bro.  One Herrin and others were laborers under Ferguson, agreeing for a stipulated sum to work for the latter.

The latter caused to be done a portion of the work contracted to be done by them, made default as to the balance, and left the country without paying their laborers.

The laborers seek by garnishment to hold the railroad liable for any amount due by it to Ferguson & Co.

The railroad company answer that they owe Ferguson & Bro. nothing, and never knew them as contractors at all ; that they contracted alone with Smith & Bro., who, they understand, contracted with Ferguson & Co.  They admit that they owe Smith & Bro. the sum of about nine hundred dollars, and as they understand that Warren & Mobley claim this sum, they pay it into court and ask

to be protected.    This is one branch of this case; the other is to be presently stated.

The answer and defense of the railroad company is perfect and complete.    By their payment into court of the total sum due their contractors they are completely acquitted.    They can never be made to pay more than they agreed to pay.    When by the act of 7th March, 1882 (Special Acts of 1882, pp. 115, 116), laborers on railroads were given the same rights as other mechanics, they took them subject to all the obligations imposed by subsequent sections on other mechanics, and by § 1379 of the Code of 1880 they can, where the work has been done by contract, never impose upon the owner of the work any higher duty or further payment than he by his contract has imposed on himself.    The railroad, therefore, by its payment into court has exonerated itself from all parties.

The other branch of this case—both being submitted together to the judge as both court and jury—is as follows :

When Ferguson & Bro. left the country, Warren & Mobley, who were supply merchants, and, as such, creditors of theirs, brought suit against them and sued out writs of garnishment against Smith & Bro. and the railroad company, by which they claimed whatever might be due them.    These garnishments preceded any notice by Herrin and other laborers.    When, therefore, the money was paid into court, the judge decided that this prior garnishment took precedence of the subsequent notice and awarded to Warren & Mobley all the money due to Smith & Bro. or to Ferguson & Bro.    From this judgment also the laborers appeal.

This judgment also was correct.    By the statute a written notice is equivalent to a garnishment; but as he who is prior in time must be prior in right, it follows that the older garnishment must cut out the later notice.

The garnishee gets just the right that the party garnished has at the time of service, and, therefore, in the present case Warren & Mobley had already obtained the entire claim of Ferguson & Bro. before the laborers brought their notice home to either party.

The code authorizes all the suits to be consolidated and the rights of all interested to be tried together.    This was done, and

the court seems to have adjusted those rights just as the law provides. Whether Warren & Mobley, in getting judgment for all due Smith & Bro., obtained more than they were entitled to cannot be here considered, since the latter do not appeal. Certainly, if there was error in this, the laborers cannot complain, since they had no interest whatever in it.

*Affirmed.*