SADLER *v.* GLENN *et al.*

(In Banc. Dec. 23, 1940.)

[199 So. 305. No. 34352.]

L. Percy Quinn, of Jackson, for appellant.

114

**Bert Crisler,** of Jackson, for appellees.

Argued orally by **L. Percy Quinn**, for appellant, and by **Bert Crisler**, for appellees.

**Ethridge, J.**, delivered the opinion of the court.

This is a contest between P. W. Sadler and certain materialmen for moneys paid into court by way of interpleader by Arthur M. White, who erected a building in the city of Jackson, and interpleaded the parties to this appeal in court upon the contract price, less amounts required to complete the contract after it was abandoned by the contractor.

Arthur M. White owned a lot in the city of Jackson, upon which he desired to erect a residence and garage. He contracted with W. S. Glenn, a contractor, to build and equip the house, this to be a "lock and key" job, for the sum of $4300. The contractor, W. S. Glenn, being unable to finance the job, procured P. W. Sadler to advance his payrolls, or to take care of them, throughout the construction of the house. It was understood in the contract between Glenn and Sadler that the latter was to receive compensation from Glenn for such service, Sadler estimating that it would amount to ten per cent on the amount so advanced, although there was no definite understanding.

It seems that the course pursued was for Glenn to make up the amounts he paid to the various laborers and others, and give it to Sadler, who would either give a check or

·pay the cash to the parties to whom money was due. Sadler under this arrangement kept the books, having an insurance office, and an employee who kept the accounts. The $1,600 was exhausted, and Sadler advanced $200 additional, and paid the same to the laborers. About this time Sadler and Glenn concluded that the contract could not be completed for the price, and abandoned the contract. Sadler then went to various parties to whom he had paid the money, and took assignments, and served notice on the owner, under section 2274, Code of 1930.

Upon the abandonment of the contract, Arthur M. White procured J. A. Roell to complete the building, on the basis of cost to be further incurred; and Roell completed the building without profit to him. But the Standard Millwork & Supply Company, largely owned by Roell, had furnished material to the amount of $3,280.27. During the progress of the work on the house, White furnished the contractor, for the building, light fixtures, finish hardware, and a mantel and kitchen fan aggregating $210, which he had a right to do under the contract, as the master found.

On receiving the notices of the various parties, under section 2274, in order to protect himself from possible errors in payments, Arthur M. White filed a bill in interpleader, making the various parties who had furnished labor and material for the house parties thereto, to be interplead; and the several parties who had furnished such labor and materials appeared and propounded their claims.

The court thereupon appointed an attorney to act as master, who heard the evidence of all parties and made a report to the Chancery Court, showing a claim, propounded and passed upon by him, amounting to $4,623.41, being itemized and specifically set forth as follows: J. A. Roell, $3,280.27; Mississippi Glass Co., $156.80; Crane & Co., $375.00; Joe Williams and W. W. Donovan, $110; Wells Interior Decorating Co., $69.70; Mack Gammill, $29.29; W. L. Bush, $96.75; W. B. Myers, $24; P. W. Sadler, assignee, $479.80.

The master ordered or directed that these claims be paid pro rata out of the funds amounting, after deducting expenses, to $3,969.47. But he allowed the claim of J. A. Roell, amounting to $120.53, out of the funds paid in full, and this balance remains $3,969.47, as stated.

Upon the filing of the master's report in the Chancery Court exceptions were taken, which exceptions were overruled by the chancellor, who affirmed the master's report. From this decree of the chancellor P. W. Sadler appealed; the appellees being J. A. Roell, doing business as Standard Millwork & Supply Company, Joe Williams, W. W. Donovan, and Mississippi Glass Company. It is contended by P. W. Sadler that his total claim should have been allowed; and that he was entitled to a lien on the funds by virtue of the assignments taken from the various laborers and others, because, it is contended, he was subrogated to the rights of the parties who had assigned their claims to him, either in writing or orally; and that he should have a lien on the funds for the total amount advanced by him under the arrangements above stated.

The master held, rightly we think, that Sadler was not entitled to any liens paid by him up to the payment of the $1,800 made at the time it was learned by Glenn and Sadler that there would be a loss on the contract. Under the arrangement between Glenn and Sadler, the latter was to furnish money to finance the job; and when he paid the laborers, and other claims, under this arrangement, he was not entitled to the lien, or to subrogation to the rights of the parties whose claims he paid under the arrangement with Glenn.

Subrogation is a doctrine of equity, governed by equitable principles. Sadler had agreed and arranged to pay these parties for Glenn, the contractor, who, of course, was to reimburse him and share such profits as should be made, by such division thereof as might be agreed upon. Under the contract, Sadler was under the duty to Glenn to pay these claims, and of course he would be subrogated, as against Glenn, to the extent of such payments. But as to other people who had furnished

labor and material in the construction of the building, he would not be entitled to have these claims, so paid by him, charged against the funds; but would be entitled only to the money paid after the abandonment of such contract with Glenn. He would only be entitled to a pro rata share, after abandoning the contract as to such funds paid or assignment made, after the contract was abandoned by Glenn.

As between Sadler and the parties assigning to him, the assignments, of course, would control, being governed by the written contract of assignment; but as to other persons, and as to the funds paid into court, he would not be entitled to a lien against the funds or building, or the money paid under the agreement with Glenn prior to the abandonment of the contract.

As to the moneys paid out before the abandonment of the contract, this case is controlled by City Coal & Lumber Co. v. Gulf Refining Co., 184 Miss. 260, 185 So. 250.

We think the report of the master as to the finding of facts by him has the force and effect of a jury verdict; and as the chancellor approved this report fully, we are unable to hold that the master and chancellor were wrong, on the facts.

It follows from what we have said that the judgment must be affirmed.

Affirmed.