LEE WHOLESALE COMPANY, et al. *v.* McCOY

No. 40613          February 3, 1958          100 So. 2d 121

*Mitchell & McNutt,* Tupelo; *Wm. L. Sharp, Orma R. Smith,* Corinth, for appellants.

*Cunningham & Cunningham,* Booneville, for appellee.

ARRINGTON, J.

Lee Wholesale Company and other materialmen and a laborer appeal from an adverse decree of the Chancery Court of Prentiss County. This suit involves the priority of liens between the appellants and Prentiss County Home Bank against funds due contractor which were paid into the registry of the Chancery Court. Lee Wholesale Company filed its suit in the Circuit Court of Prentiss County to enforce lien for materials furnished in the construction of a dwelling house. C. E. McCoy was the contractor and defendant. The Wholesale Company later amended to include the Prentiss County Home Bank, as the Bank had a deed of trust on the property securing a loan to McCoy. Other materialmen intervened under Section 361, Mississippi Code of 1942, and later upon motion, the cause was transferred to the Chancery Court of Prentiss County.

The record discloses the following facts: On June 10, 1955, one E. O. Roden obtained an option on an acre of land from Donald Franks and his wife for the purpose of obtaining an FHA insured loan to build a home; that the option was conditioned that on or before the closing of the FHA insured loan, Roden would pay to Franks and his wife the sum of $1500; Roden obtained a committment from the FHA to insure a loan on the property when the residence had been completed and title vested in him. Subsequently, on September 6, 1955, Roden entered into a written contract with one C. E. McCoy to construct the residence for the sum of $14,500, to be paid when

the house was completed and approved. McCoy started construction of the home immediately thereafter. On November 26, 1955, McCoy made application to the Bank for a loan of $9750, offering Roden's $13,000 FHA committment as security. On December 3, 1955, McCoy made application to the Bank for a loan of $5,000. The application shows that the security to be taken was a deed of trust on the lot in question and a seven-room brick veneer house, "insurance $15,000, E. O. Roden house." Mr. Bishop, the president of the bank who handled the transaction, refused to make the loan unless McCoy furnished him with a deed of trust on the property. On December 2, 1955, Donald Franks and his wife, who had previously given an option to Roden, conveyed by warranty deed the lot in question to McCoy, but before delivering this deed, Franks required McCoy to enter into a written contract to convey this lot to E. O. Roden upon completion of the house and upon payment of $1500. The option, at this time, had not been recorded. Franks was a director in the bank and also represented Roden.

Franks testified in behalf of the appellees that Mr. Bishop, the president of the bank, was familiar with and had complete knowledge of all the facts; that the financial arrangements were made on Mr. Bishop's insistence; that he explained to the contractor, McCoy, and Mr. Bishop, the president of the bank, that before he could make the deed he would have to have a contract from McCoy to protect Roden and himself from the option he had given; that he was reluctant to do this but Mr. Bishop insisted upon it being done that way.

At the time of the trial, Mr. Bishop was ill and was unable to testify, however, M. W. Smith, vice-president of the bank, testified as to the transactions that took place, and that Mr. Bishop handled the matter with McCoy, the contractor. It was stipulated and agreed that the materialmen and laborer who had filed claims in the cause may be considered as having proven that the ma-

terials and labor set out in their several claims for materials furnished and labor performed were furnished to and performed for C. E. McCoy, and that same were used in the construction of the residence. It was also agreed that the materialmen had given E. O. Roden notice under Section 372, Code of 1942, of their claims against McCoy, the contractor. It was also shown that at the time Roden was given notice he had not made any payments to the contractor. It also appears from the record that the dwelling was not completed and it was agreed and stipulated that the owner would be given a discount on the contract price of $1500, which would leave a balance of $14,208.79, due to the contractor, McCoy. It was further agreed that if Roden would pay this sum into the registry of the Chancery Court of Prentiss County, that he would have a conveyance of the title to the land and a complete release from all the parties to the agreement. Roden paid the above amount into court, which included the balance due on the contract and the purchase price of the lot of $1500. It was further agreed that Roden was not a party to, or implicated in, or had anything to do with the transfer of the record title from Franks to McCoy, or in the taking of the deed of trust on the lot from McCoy by the bank. It was further agreed that Roden was eliminated from the suit.

The chancellor held that the deed of trust was valid and that the bank was entitled to priority of payment out of the funds paid into court for all money advanced under the deed of trust that went into the purchase of the lot and the construction of the residence; that he deducted the amount of $704.44 and also disallowed the claim of the bank for interest and attorneys' fees insofar as the payment from the fund was concerned, and held that the bank should be paid the amount of $10,060.35, after costs of the lower court were paid, and that the balance was to be divided among the other claimants on a pro-rata basis. From this decree, the materialmen

have appealed, and the appellee, Prentiss County Home Bank, cross-appeals, contending that the court erred in deducting the amount of $704.44 and in refusing to allow interest and attorneys' fees to be paid from the fund.

The main assignment argued by the appellants is that the court erred in holding that the appellee, Prentiss County Home Bank, was entitled under its deed of trust on the property involved in this action to priority of payment from the funds deposited in the registry of the court in the amount of $10,060.35. Appellants agree that the bank was entitled to priority of payment of $1500, which was paid by McCoy to Franks for the lot in question from the funds advanced by the bank. We are of the opinion that the court erred in giving the bank priority for the full sum of $10,060.35, but that the bank has a prior lien in the amount of $1500 which went to pay for the lot.

Section 373, Mississippi Code of 1942, reads as follows:

"No contractor or master workman except as hereinafter provided, shall have the right to *assign, transfer, or otherwise dispose of in any way, the contract or the proceeds thereof,* to the detriment or prejudice of the subcontractors, journeymen, laborers, and materialmen as declared hereinbefore and all such assignments, transfers, or dispositions shall be subordinate to the said rights of the subcontractors, journeymen, laborers and materialmen, as well as the owner. Provided, however, that this section shall not apply to any contract or agreement where the contractor or the master workman shall enter into a solvent bond conditioned as provided for in the following section." (Emphasis ours)

McCoy did not give the bond required by the statute. We are of the opinion that the deed of trust given by the contractor in this case to the appellee bank violates the provisions of the above quoted section, and was void as to appellants and to Roden who was the

equitable owner. The record reveals that the bank was familiar with and had knowledge of all the facts in this case, and knew that McCoy was the contractor and that Roden was the equitable owner. The testimony of Franks, a director in the bank, and McCoy is not disputed in that Mr. Bishop, the president of the bank, had such knowledge.

We held in the case of Ladner, et al., v. Hogue Lumber and Supply Co., Inc., 91 So. 2d 545, as follows:

"Under and by virtue of Sec. 373 of the Mississippi Code of 1942, an assignment or transfer of the contract by the contractor or master workman is subordinate to the rights of the sub-contractors, journeymen, laborers, and materialmen, as well as the owner unless performance bond is given as required by Sec. 374, Miss. Code of 1942. In American Oil Company v. Ratliff's Sheet Metal Works, 155 Miss. 779, 125 So. 249, the contract had been assigned to the First National Bank of Brookhaven by the contractor. Yet, when the contractor failed to carry out the contract, the court held that American Oil Company, the owner, who had completed the building was entitled to credit on the contract price for the amount required to complete the building and the further sum of $639, being the rental value of the property for three months which American Oil Company had lost because of the delay and that the assignment of the contract was void as to the materialmen and laborers under the contract."

In the instant case the bank did not deal with Roden, the equitable owner of the house, but its dealings were with McCoy, the contractor. Thus it does not come within the rule announced in the case of Chancellor, et al. v. Melvin, et al., 211 Miss. 590, 52 So. 2d 360, but is controlled by the rule announced in Sadler v. Glenn, 190 Miss. 112, 199 So. 305, and City Coal & Lumber Co. v. Gulf Refining Co., 184 Miss. 260, 185 So. 250. Compare Strangi v. Wilson, et al., 223 Miss. 122, 77 So. 2d 697.

The conclusion we have reached disposes of the cross-appeal. It follows from what we have said that the decree of the court below is reversed and judgment entered here for the appellants. Out of the funds deposited in the registry of the lower court, the court costs in the lower court are to first be paid; the bank is to be paid the sum of $1500, representing the purchase price of the lot; and, next, the claims of the appellants are to be paid in full and the three materialmen who did not appear are to be paid the amount allowed them by the court below; the balance to be paid to the bank.

On direct appeal, the cause is reversed and judgment entered here for appellants, and remanded for a decree not inconsistent with this opinion; affirmed on cross-appeal.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.